[Cite as *State v. Tucker*, 2018-Ohio-2859.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27693 |
| | : | |
| v. | : | Trial Court No. 2016-CR-3714 |
| | : | |
| ISAIAH M. TUCKER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 20th day of July, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL SCARPELLI, Atty. Reg. No. 0093662, Assistant
Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, 301
West Third Street, Fifth Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee


HILARY LERMAN, Atty. Reg. No. 0029975, 249 Wyoming Street, Dayton, Ohio 45409
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant, Isaiah M. Tucker, appeals his conviction and sentence for Count I, felonious assault (deadly weapon), in violation of R.C. 2903.11(A)(2), a felony of the second degree; Count II, improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161(A)(1), a felony of the second degree; and Count III, discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3) and (C)(2), a felony of the third degree. Counts I and II were both accompanied by a five-year firearm specification. Count III was accompanied by a three-year firearm specification. Tucker filed a timely notice of appeal on August 16, 2017.

{¶ 2} On November 11, 2016, Samuel Parker witnessed Bryson Williams shoot Terion Dixon on Germantown Street in Dayton, Ohio. Dixon succumbed to his wounds. Although it was later determined that Parker had no involvement in the shooting, both he and Williams were seen running away in the same direction after the crime occurred. Parker testified that he believed that residents in his neighborhood, including Isaiah Tucker, were blaming him for Dixon's death. Tucker and Dixon had been close friends before Dixon was shot and killed.

{¶ 3} Parker testified that he was acquainted with Tucker through an individual named Robert Stargell. Parker testified that Stargell is his cousin. Parker testified that Stargell's apartment at the DeSoto Bass housing complex was known as "the spot." It was a place where people from the surrounding neighborhood would gather to socialize, drink alcohol, and smoke tobacco. Parker testified that he had observed Tucker several times at Stargell's apartment and was familiar with the sound of his voice. Parker testified that he had observed Tucker at "the spot" on the day Dixon was murdered.

{¶ 4} At approximately 2:30 p.m. on November 25, 2016, Parker was sitting in a yard across the street from his residence, which was located at 94 Benning Place in Dayton, Ohio. Parker testified that he was sitting across the street so that he could access his neighbor's wireless internet connection. Next, Parker testified that he heard a motor vehicle being driven very quickly up Clement Avenue to his left. As Parker looked on, the vehicle came to a stop at the intersection of Clement Avenue and Benning Place, and a man sitting in the rear-passenger seat stated, "There he go, right there." Parker testified that he identified the man by his face and voice as the defendant-appellant, Isaiah Tucker. Tucker was wearing a black hooded sweatshirt with the hood pulled up. Parker testified that there were three other individuals in the car.

{¶ 5} After pointing out Parker, Tucker extended his arm out of the vehicle with a firearm in his hand and fired seven to eight shots. Parker testified that he ran around the side of a nearby building for cover. The driver put the vehicle in reverse and backed up, apparently so that Tucker could see Parker. Parker began running away, and Tucker fired several more shots. Parker ran to the apartment of a neighbor and tried to enter the front door, but it was locked and no one answered the door. Parker then ran to a grassy area in the apartment complex where he tripped and fell when one of his sandals came off. Parker lay on the ground for a short time until the shooting stopped.

{¶ 6} Once he determined that Tucker had left the vicinity, Parker got up and ran to another neighbor's apartment, and he called 911. Parker did not identify the shooter to the 911 operator. At trial, Parker testified that he failed to do so because he was "in shock" and only wanted the police to arrive quickly. Parker did inform the 911 operator that he believed he was attacked in retaliation for the killing of Terion Dixon by Bryson

Williams. Parker also informed the 911 operator that the vehicle in which the shooter had ridden was a light blue, four-door Saturn sedan. At trial, however, Parker testified that after observing similar vehicles in the days following the shooting, he realized that the vehicle from which Tucker shot at him was a light green, four-door Volvo sedan. Thus, in his written statement to the police, he identified the suspect vehicle as a light green, four-door Volvo sedan.

{¶ 7} Officer Cody Hartings of the Dayton Police Department was dispatched to the scene of the shooting. Upon arriving, Officer Hartings interviewed Parker, who immediately identified Tucker as the individual who shot at him. Also responding to the scene, Officer Ronald Christoffers testified that he discovered a fired bullet lying in the road between two cars parked in front of 91 Benning Place. Officer Christoffers testified that he also observed that one of the screens on a window at 91 Benning Place had been damaged. No one was home at the time, so Officer Christoffers left a note for the residents. When the resident, Tyneia McGill, returned home to 91 Benning Place, she contacted Officer Christoffers.

{¶ 8} Upon gaining entry to the residence, Officer Christoffers found that a bullet had passed through and shattered a window, damaged the blinds, and passed into the kitchen where it struck the door of the refrigerator. Upon further examination, Officer Christoffers observed that the bullet had lodged itself into the top of the refrigerator. Officer Christoffers testified that he could not retrieve the bullet without causing structural damage to the refrigerator. Since McGill had perishable items in the refrigerator, Officer Christoffers decided not to retrieve the bullet. Officer Christoffers testified that, based upon the trajectory of the bullet, the shot could have been fired from the intersection of

Clement Avenue and Benning Place.

{¶ 9} In his written statement to police, Parker identified Tucker as the individual who shot at him on November 25, 2016. Parker also testified at Tucker's preliminary hearing and identified Tucker as the shooter. At trial, Parker testified that he was "one hundred percent" certain that Tucker was the individual who shot at him on the day in question.

{¶ 10} Thereafter, on February 2, 2017, Tucker was indicted for one count of felonious assault with a deadly weapon (Count I), one count of improperly discharging a firearm at or into a habitation (Count II), and one count of discharge of a firearm on or near prohibited premises (Count III). As previously stated, each count was accompanied by a firearm specification. At his arraignment on February 7, 2017, Tucker stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 11} On May 5, 2017, Tucker filed a notice of alibi, and on July 23, 2017, he filed an amended notice of alibi. The case proceeded to a jury trial on July 24 and 25, 2017. In addition to the State witnesses who testified, Tucker presented the testimony of three witnesses, to wit: Michelle Tucker, Corionna Simmons, and Gemeika Simmons.

{¶ 12} Michelle Tucker is the mother of Isaiah Tucker. Michelle testified that on November 25, 2016, she, along with Isaiah and several others, attended the viewing and funeral of Terion Dixon at a funeral home on Germantown Street in Dayton, Ohio. Michelle testified that she arrived at the funeral home with Tucker between noon and 1:00 p.m. During the service, Michelle and Tucker sat with members of Terion Dixon's family. Michelle testified that Tucker stayed for the entire service, and although many other attendees spoke in memory of Dixon, Tucker did not. Michelle testified that the service

lasted until approximately 2:30 p.m., at which point many of the attendees gathered outside the funeral home to talk to one another for approximately fifteen minutes.

{¶ 13} At this point, Michelle indicated that she drove to a nearby liquor store. Michelle testified that Tucker walked by himself to the liquor store. After making purchases at the liquor store, Michelle and about twenty others, including Tucker, went to her residence in Trotwood, Ohio, where she hosted a small gathering. Michelle testified that the gathering, which began at approximately 3:00 p.m., lasted for several hours and that Tucker was present there the entire time.

{¶ 14} Corionna Simmons testified that she was a childhood friend of Isaiah Tucker. Corionna testified that her mother drove her and her sister, Gemeika, to the funeral on November 25, 2016, at approximately 12:30 p.m. Corionna testified that the funeral lasted until 4:00 p.m. After the funeral, Corionna testified that she and a group of friends from the funeral, including Tucker, walked to the nearby liquor store where they remained for approximately fifteen minutes while people made purchases. After leaving the liquor store, Corionna traveled to Michelle's house with Tucker. Corionna testified that they did not arrive at Michelle's house until well after 3:00 p.m. On cross-examination, Corionna testified that even though Tucker had been in jail for months by the time of trial and she was aware that Tucker had been accused of committing a shooting on the same day of Terion Dixon's funeral, Corionna never informed the police that she was with Tucker at the funeral when the shooting occurred.

{¶ 15} Gemeika Simmons, Corionna's younger sister, testified that she was also close friends with Tucker and looked up to him like an "older brother." Unlike her sister, Gemeika testified that the funeral service only lasted between an hour and an hour and

forty-five minutes. Gemeika testified that Tucker was present for the entire service. However, contrary to Michelle's testimony, Gemeika testified that Tucker did get up to speak during Terion Dixon's funeral. After the funeral, Gemeika went with her sister, Corionna, to the liquor store and then to Michelle's house. Gemeika testified that she did not remember seeing Tucker leave Michelle's house at any point while the gathering was taking place. Gemeika admitted that she never contacted the police after Tucker was arrested to inform them that she could provide alibi information.

{¶ 16} In rebuttal to the testimony provided by the defense witnesses, the State called Dayton Police Detective Nathan Via. Detective Via testified that he interviewed Michelle Tucker one week prior to Tucker's trial. Detective Via testified that contrary to her trial testimony, Michelle informed him that after the funeral, Tucker drove to the liquor store in a motor vehicle with three other individuals. Michelle also stated during the interview with Detective Via that she could not unequivocally state that Tucker was present for the entire duration of the post-funeral gathering at her residence. Detective Via also testified that many of the individuals present in the courtroom during Tucker's preliminary hearing when Samuel Parker testified were identified as being close friends of Tucker and Corionna and Gemeika Simmons.

{¶ 17} Finally, Detective Via testified that he drove the route from the funeral home on Germantown Street to the nearby liquor store, and then to the intersection of Clement Avenue and Benning Place where the shooting occurred. Detective Via then stopped and counted off the amount of time necessary to fire off several gunshots. Detective Via then drove his vehicle to the other locations around the area where Parker recalled Tucker shooting. Based upon his calculations, Detective Via estimated that he was only thirty

seconds away from the funeral home by car taking the most direct route. The total distance he covered was 1.2 miles, and only four and one-half minutes elapsed during his entire event reconstruction.

{¶ 18} Ultimately, the jury found Tucker guilty on all counts in the indictment. On August 2, 2017, the trial court merged Counts II and III, and the State elected to proceed on Count II (improperly discharging a firearm at or into a habitation). The trial court also merged the two remaining five-year firearm specifications into one. The trial court thereafter sentenced Tucker to a mandatory prison term of eight years for both Counts I and II, and ordered that the terms be served concurrently. The trial court also sentenced Tucker to an additional mandatory consecutive term of five years for the firearm specification, for an aggregate term of thirteen years in prison.

{¶ 19} It is from this judgment that Tucker now appeals.

{¶ 20} Tucker's sole assignment of error is as follows:

THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 21} In his sole assignment, Tucker contends that his convictions were against the manifest weight of the evidence, and should therefore be reversed.

{¶ 22} A weight-of-the-evidence argument "challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009–Ohio–525, ¶ 12; see *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against

the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 23} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 24} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97–CA–03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 25} Upon review, we conclude that Tucker's convictions are not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony are matters for the jury to resolve. Although Tucker presented alibi

evidence in the form of testimony from his mother and two childhood friends, the jury was free to disbelieve their testimony. We have noted the internal inconsistencies present in their testimony. Further, the jury was free to consider all three witnesses' bias in favor of Tucker. The jury did not lose its way simply because it chose to believe the State's witnesses, including the eyewitness testimony of Samuel Parker who clearly identified Tucker as the individual who shot at him from the backseat of a sedan on November 25, 2016. Parker testified that he was acquainted with Tucker through Robert Stargell, Parker's cousin. Parker testified that he had observed Tucker several times at Stargell's apartment and was familiar with the sound of his voice. Parker testified that he had even observed Tucker at Stargell's apartment on the day Terion Dixon was murdered. Therefore, Tucker had ample time to drive the short distance to where Parker was located and attempt to shoot him, as well as to shoot into the residence located at 91 Benning Place from his vantage point at the intersection of Clement Avenue and Benning Place. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

{¶ 26} Tucker's sole assignment of error is overruled.

{¶ 27} Tucker's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies mailed to:

Michael Scarpelli
Hilary Lerman
Hon. Dennis J. Adkins